### ELLA LOORAM, Wife of J. G. PUJOL, *v.* WILLIAM BURLINGAME.

A person employed to retain possession for the owner, cannot be permitted to defeat the object for which he was employed, and the moment he resists the entry of the owner he becomes a trespasser. 12 An., 687.

*Per curiam :* It would be difficult to prove, as a legal proposition, that the tenant, after the termination of his lease, and after he had left the premises, could maintain a civil possession and prevent the entry of the owner by leaving a few effects and carrying away the keys ; for the possession of the tenant is that of the owner. C. C. 3396, 3404, 487. When, therefore, he abandons the property, it would seem he ceases to possess and cannot prevent the lawful owner, his landlord, from entering

APPEAL from the District Court of the Parish of St. Tammany, *Wilson,* J. H. G. *Penn*, for plaintiff. *Alfred Hennen*, for defendant and appellant.

MERRICK, C. J. This is an action of trespass for forcibly breaking open a building and removing certain household furniture of the plaintiff. The jury gave $100 damages against the defendant, and he appeals.

The principal facts are these : In 1849, *D. C. Lowber* owned a house and lot and out-buildings in the town of Louisburg, on the lake shore, in the parish of St. Tammany. He employed the husband of the plaintiff as a laborer, and probably the plaintiff herself as a servant during the summer season, whilst he remained at the watering place, and gave them an out-building in which to reside. During his absence they were left in charge of the place. After 1853, *Lowber* seems not to have returned, but to have leased the premises to others. The plaintiff

and her then husband remained on the place in the house assigned them by *Lowber* until the death of the husband. It does not appear that *Lowber's* tenants, who occupied the place from 1853 to 1856 or 1857 interfered with plaintiff's occupancy of the out house. In 1856 or 1857, *Lowber* sold the property to *J. F. A. Boyle,* and the plaintiff married again and went to live with her present husband, *Pujol.* She, however, suffered some effects of the value of $40 or $50 to remain in the building which she kept locked. *Boyle* being desirous of removing the out house nearer his dwelling, employed *Burlingame,* the defendant, to remove it. The latter entered the building by opening a window, and the plaintiff's effects were placed in the coach house, another building on the same place. It does not appear that the goods were damaged by such removal. *Burlingame* took the roof off the building, and moved the same as intended by *Boyle.*

It is quite clear from the whole testimony that plaintiff did not have possession of the property as tenant. It was not expected that she or her husband should pay rent, and she never did pay rent, although a bill was presented her after she had been notified to leave the premises and she refused to go.

The solution of the question to be decided in this case depends upon the fact whether the plaintiff held the possession of the property. We think the only possession she ever had of the property was that of an agent of the owner. She never had any adverse possession. Hence when *Boyle* acquired the property he acquired the possession of the out-buildings as well as the dwelling and he had the right to remove plaintiff's effects to any other safe place or even to notify her to take them away. A person employed to retain possession for the owner, cannot be permitted to defeat the object for which he was employed, and the moment he resists the entry of the owner he becomes a trespasser. See *Perret and wife* v. *Sanchez,* 12 An. 688. There does not appear to us to be any cause of action. The goods are in *Boyle's* possession and will doubtless be surrendered plaintiff on demand.

Had the plaintiff ever been a tenant at will there would have been very little merit in her action. For she had been notified to leave the premises. She had paid no rent and she had actually removed and lived elsewhere. It would be difficult to prove as a legal proposition, that the tenant, after the termination of his lease and after he had left the premises, could maintain a civil possession and prevent the entry of the owner by leaving a few effects and carrying away the keys; for the possession of the tenant is that of the owner. C. C. 4396, 3404, 487. When, therefore, he abandons the property, it would seem he ceases to possess, and cannot prevent the lawful owner, his landlord, from entering.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and that there be judgment against the plaintiff's demand, and in favor of the defendant; and that plaintiff pay the costs of both courts.