### No. 9683

### Orleans

____

### RICCOBONO v. KEARNEY

____

(March 28, 1927.   Opinion and Decree.)
(Oct 31, 1927.   Supreme Court judgment under Review annulled and set aside.)

____

(*Syllabus by the Court*)

1. **Louisiana Digest—Damages—Par. 47, 48.**

It is the duty of a party to minimize the damages he may suffer from the wrongful act of another if he can do so by reasonable effort and moderate expense.

. 2. **Louisiana Digest—Landlord and Tenant —Par. 78.**

When a lessee abandons the premises leased the lessor may take possession of them and lease them for account of the lessee.

Appeal from Civil District Court.   Hon. E. K. Skinner, Judge.

Action by Dominico Riccobono against J. J. Kearney.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Theo. Cotonio, of New Orleans, attorney for plaintiff, appellant.

A. B. Leopold and Sanders, Baldwin, Viosca and Haspel, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J.   Plaintiff claims of the defendant $1925 for rent.

Plaintiff alleged that on May 1, 1923, he leased to J. J. Kearney the No. 3865 Gentilly Boulevard for twelve months com-

mencing May 1, 1923, and ending April 30, 1924, at $175 per month payable monthly, for which said lessee gave his twelve notes; it was stipulated in said lease that "should said lessee at any time fail to pay said rent punctually at maturity, the rent for the whole unexpired term of said lease should at once become due and exigible" with ten per cent attorney's fees; that the rent note due June 1, 1923, was unpaid, which caused the maturity of all the eleven unpaid notes amounting to $1925.

The plaintiff prayed for provisional seizure and for judgment for $1925 with interest and attorney's fees.

For answer the defendant admitted signing the lease and the notes and his failure to pay the same; he averred that he leased said premises with "all the furniture and equipment contained in said premises as set forth and enumerated in an. inventory attached to the lease; that after he had paid the rent for the month of May he learned that the cash register in the premises did not belong to the plaintiff, but was the property of the National Cash Register Co., and was by them removed on May 29th for the reason that there were due thereon two notes of $25 each; that after the provisional seizure the plaintiff caused to be removed from the premises all the soft drinks; that on May 17th the plaintiff caused to be removed from the premises a gas stove which was essential to his business, and compelled him to use a coal range.

During the trial it was proved that after the seizure the defendant abandoned the premises and that the plaintiff rented the premises without consulting the defendant or giving him an opportunity to sublease them himself. The defendant contended that such action constituted a termination of the lease.

On April 21st there was judgment in favor of defendant rejecting plaintiff's demand, and he has appealed.

On May 5, 1924, the plaintiff filed a petition averring that since the defendant had abandoned the leased premises he had leased the same to other parties from September 10, 1923, to April 30, 1924, the date of the expiration of the lease, and that he collected rents from said premises for that period of time amounting to $871.88 for which he entered a remittitur.

The facts of the case are that the plaintiff was in the soft drink and restaurant business at 3865 Gentilly Boulevard; that wishing to retire from the business there he employed Generes and Ganucheau, real estate agents, to lease his place; these agents procured the defendant, they leased to him the building and the contents of the soft drink establishment consisting of knives, forks, plates, glasses, tables and. other accessories of the business, of which a list was made for the price of $175 per month; there were on the premises an electric sign, a cash register, an ice box, and a piano, bought by plaintiff on time, upon which he had made partial payments; it was agreed that the defendant was to pay to the plaintiff the amounts which the plaintiff had paid on account of those four articles and to assume to pay the installments still due the amount of which was to be ascertained later, and at the expiration of the lease the plaintiff was to reimburse to the defendant one-half of the amounts paid by the lessee on account of the four articles mentioned above.

In accordance with these preliminary arrangements the lease sued on was committed to writing.

The clauses concerning these four articles read as follows:

"The lessee agrees to pay the following amounts for the articles of equipment hereunder enumerated and agrees to pay promptly the installments still due on said articles of equipment when same fall due.

"Amounts payable in cash to lessor:

| | |
|---|---|
| Electric sign | $150.00 |
| Cash register | 175.00 |
| Ice box | 96.00 |
| Piano | 105.00 |
| Total | $526.00 |

"Lessor agrees to reimburse the lessee upon the expiration of this lease * * * one-half, of the amounts paid by the lessee on account of the articles of equipment hereinabove set forth."

Accordingly the defendant gave to the plaintiff his check for $701, composed of the above sum of $526 and of one month's rent of $175, and went into possession of the premises and movables leased.

When the National Cash Register Co. called for an installment of $25 due for a month anterior to his purchase the defendant failed to pay it and the Company removed the register without protest on defendant's part. He had another register of his own on the premises. He thereafter failed to pay his rent.

Hence this suit.

He bases his refusal to pay the rent on two grounds:

1st. Because the Register Company removed the register and,

2nd. Because the defendant removed a stove.

The Company removed the register because the defendant did not pay the installments due.

These installments he had assumed to pay and it was his failure to pay them which brought about the removal. He cannot visit his fault upon the plaintiff.

But even if it was the duty of plaintiff to pay the installment and he refused to do so, the defendant should have paid it to minimize his loss, the more so as the lease was ample to protect him.

In the case of Tardos vs. Rrd., 35 La. Ann. 15, the plaintiff asserted a contract with the defendant for a low freight rate which the defendant refused to recognize and claimed more freight.

On defendant's refusal to accept the reduced freight, the plaintiff abandoned the goods and afterwards sued for damages. The Court held that the defendant should have paid the freight claimed and then sued to recover it.

Said the Court:

"Equity as well as law, abhors the idea that a man who, by the payment of $58, could escape all injury, may quietly sit down and suffer damage to the extent of $1900, and then claim this enormous sum from a third person without even notifying him of the injury or giving him the opportunity to avert the damage."

Beers vs. Bd. of Health, 35 La. Ann. 1132; Armistead vs. Shreveport & R. R. Valley Ry Co., 108 La. 171, 32 So. 456; Chattanooga Car & Foundry Co. vs. Lefebre, 113 La. 487, 37 So. 38; Donovan vs. New Orleans Ry. & Light Co., 132 La. 239, 61 So. 216; New Iberia Sugar Co., Ltd., vs. Lagarde, 130 La. 387, 58 So. 16; Airey vs. Pullman Palace Car Co., 50 La. Ann. 648, 23 So. 512; Curl vs. Bond, 52 La. Ann. 1052, 27 So. 577; Carr vs. Miller-Morris Canal, Irrigation & Land Co., Ltd., 105 La. 239, 29 So. 715; 4 Orl App. 111; 13 Cyc. 71; 1 Sedgwick, S. 93, p. 165; 2 Greene Ev., S. 261.

The law does not favor the abrogation of leases. Denman & Co. vs. Lopez & Co., 12 La. 823.

2nd. The stove was not a part of the articles leased; it was not upon the list. It belonged to a third person who removed it.

3rd. The last defense is that taking possession of the leased premises after defendant had abandoned them, and leasing them to a third party without defendant's consent amounts to an acceptance of the premises and releases the lessee.

In support of this proposition the defendant quotes 35 C. J. 1093.

It finds no echo in the jurisprudence of our State. On the contrary our Courts have decided that:

"Where a lessee abandons the premises the lessor may collect the rent due from subtenants and procure new ones for the former's benefit; and where he has never refused to give the lessee the premises on his complying with the lease, such acts will not cancel the lease, and the lessee will be bound for the difference between the rent and that received from the subtenants." 11 R. 101; 2 N. S. 453; L. D. 369, No. 5; Sargent vs. Slatter, 6 La. Ann. 72; Reynolds vs. Swain, 13 La. 198; (O) Succession of Jno. O'Loghlen, 27 La. 364; Vincent vs. Frelich, 50 La. Ann. 378, 23 So. 373; Bullier vs. Huppenbauer, 23 La. Ann. 339, (O); Penn vs. Collins, 5 Rob. 213, (O); Orr & Laubenheimer Co. vs. Wilson & Co., 48 La. Ann. 1313, 20 So. 724; Ledoux vs. Jones, 20 La. Ann. 539; Parker vs. Alexander, 2 La. Ann. 188, (O), 187; Wolf vs. Cuccia, 144 La. 336, (80 So. 581); Looram vs. Burlingame, 16 La. Ann. 199, (O) — 198; Johnson vs. Meyer, 36 La. Ann. 333, (O) — 333; Smith vs. Haas, 36 La. Ann. 413, (O) — 413; Looran vs. Burlingame, 16 La. Ann. 199, (O) — 198; O'Kelly vs. Ferguson, 49 La. Ann. 1230, 22 So. 783; Schleider vs. Deilman, 44 La. Ann. 462, 10 So. 934; Meriwether vs. Dorrity, 158 La. 405, 104 So. 187; 11 Orl. App. 297; 7 Orl. App. 426.

In Hyman vs. Hibernia Bank, 144 La. 1085, 81 So. 718, the Court said:

"Again it has been held that the abandonment by the lessee of the leased premises has the effect of maturing the whole amount of the rent under the lease." Christy vs. Casanave, 2 Mart. N. S. 453; Holder vs. Tanner, 6 La. Ann. 75.

It is therefore ordered that the judgment appealed from be reversed and set aside; and it is now ordered that the plaintiff Dominico Riccobono have judgment against the defendant J. J. Kearney for the sum of one thousand nine hundred and twenty-five dollars with eight per cent per annum interest upon that sum from June 1, 1923, up to April 30, 1924, subject to a credit of eight hundred and seventy-one 88-100 dollars on said April 30, 1924, and a like interest of eight per cent upon the remaining one thousand and fifty-three 12-100 dollars from May 1, 1924, till paid; together with ten per cent attorney's fees on said principal of one thousand nine hundred and twenty-five dollars and upon the interest above mentioned, the whole with lessor's privilege and maintaining the provisional seizure issued herein.